

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Murrell L. Buckner, Chairman
Game, Fish and Oyster Commission
Union Terminal Station
Dallas, Texas

O-6269

Dear Sir:

Opinion No. 0-6269
Re: Method of handling funds
collected for licenses
by game and fish wardens.

Your opinion request to this department reads as follows:

"I would like to have an opinion from you as to the method of how game and fish wardens should handle money collected for licenses and how it should be remitted to the Commission at Austin."

We wish to point out in the outset that we are concerned only with the legal aspects of this question and aside from those we feel that the matter is one that regulations of the Commission may properly direct. Our department has formerly held that game and fish wardens are public officers of the State of Texas and in the absence of contrary statutory provisions we think the laws and decisions relating to officers generally apply with equal force to such wardens. See our Opinion No. O-6271, a copy of which is inclosed. The duty and authority of game and fish wardens to issue, collect for, and deliver the various types of licenses required by our game and fish laws is unquestioned and each warden is required to execute a bond in the sum of $1,000.00, "conditioned upon the faithful performance of the duties of his office." Articles 978-1, Section 8, and 978 m, Section 4, Vernon's Annotated Penal Code.

The duties of the game and fish wardens with respect to funds collected for licenses are not set out in a single provision of the statute but such provisions as we do have appear as a part of the act providing for the particular license involved. Articles 923 qa, Section 3; 934 a, Section 8; 934 b, Section 7; V.A.P.C., and Article 4032a, Section 2,

Honorable Murrell L. Buckner, page 2

Vernon's Annotated Civil Statutes. These provisions are in substantial agreement and require the warden to remit all moneys collected to the Commission at Austin for deposit in the State Treasury. Articles 923 qa, Section 3, and 934 a, Section 8, V.A.P.C., require that the remittance be made "before the 10th day of the month following the sale of such license." Article 934 b, Section 7, V.A.P.C., specifies the time of remittance as "not later than the tenth day of the month following their collection." Article 4032a, Section 2, V.A.C.S., sets the remittance date at "on or before the 10th day of the month next succeeding that during which said license was issued." We think that Article 4025, V.A.C.S., (Acts 1913, p. 297; Acts 1923, 2nd C.S., p. 61), insofar as the same would require weekly remittances of license fees collected under the fish and oyster laws along the coast, has been repealed by the subsequently enacted special provisions cited above. 39 Tex. Jur. 139; 39 Tex. Jur. 150. Thus we think the warden complies with the governing statutes on remittance dates if he sends the license fees to the Commission by the tenth of the month following their collection.

Such provisions, though complied with, still leave the warden at a loss as to the proper method of handling the funds during the period of time pending remittance, which, as to some of the fees, might be thirty or forty days. During such period he is the custodian of public funds and as we understand it, though charged with their safe keeping and transmission, he does not have available a safe or vault for such purpose. Furthermore, the Commission is not authorized by law to designate depository banks for its funds, but is charged with the duty of placing them in the State Treasury. In view of this situation may the warden utilize present day methods common to all commercial transactions? May he accept checks for licenses, deposit them for collection and deposit funds in commercial banks for safekeeping and transmission to Austin? Or, on the other hand, in this day of deposit insurance and rapid transfer of credits, is he relegated to the backwoods method of cradling the State's money in his boot or a money belt until remittance day rolls around?

In this connection let us consider the liability of the wardens as public officers with respect to these funds. In 34 Texas Jurisprudence, at page 474, it is stated that:

"An officer who is the custodian of public
money does not occupy the position of a mere bailee
for hire, who is responsible only for such care of
the money as a prudent man would take of his own;
nor is he a 'debtor' to the county within the or-
dinary meaning of the term, since if he were, the
money would be his property and he could not be
guilty of misapplying it as the offense is defined
in the Penal Code. He is bound to account for and
pay over the money to the person entitled, less his
commissions, or his sureties must pay it for him;
and neither he nor his sureties are relieved from
liability by the fact that the money was stolen with-
out his fault or was lost by being deposited in a
bank which failed without negligence on his part,
except in some cases where the bank has been desig-
nated as a public depository."

This rule was quoted with approval in the late case of American
Indemnity Co., et al., vs. State, (Civ. App., San Antonio), 104
S. W. (2d) 68, the quotation being derived from Town of Cameron
vs. Hicks, 65 W. Va. 484, 64 S. E. 832, 835, 17 Ann. Cas. 926.
The language is as follows:

"By the great weight of authority, the cust-
odian of public money is not a bailee, bound only
to the exercise of a high degree of care, prudence
and diligence for its safety, and excusable for the
loss thereof by fire, robbery, theft, or bank fail-
ure, when such loss is not in any sense due to neg-
ligence or misconduct on his part, but a debtor and
insurer to the extent of the amount received, ex-
cusable for no losses except those resulting from
acts of God or the public enemy." See also 93 A.L.R.
819.

It therefore appears that a warden charged by law
with the custody, safekeeping and transmission of license fee
funds, is absolutely liable for such funds until the moneys
are actually in the hands of the Commission at Austin in the
absence of the intervention of an act of God or the public
enemy. And, while the use of the ordinary banking channels
is not affirmatively authorized by law, we think that in this

day their use should be expected, if not required. Indeed, some cases have held that it would be negligence not to use such facilities. See United States Fidelity and Guaranty Co. vs. Carter, (1933) Va., 170 S. E. 764; 90 A.L.R. 191. Since no such methods are provided by law, the warden should realize however, that he adopts these methods at his own peril, and does not thereby relieve himself of the liability placed upon him as an insurer as to these funds. It follows that if a warden assumes this risk as he most likely will, he will accept a check in payment for a license at his own risk -- a bank deposit will be made at his risk, and use of a bank check or draft for remittance will be made at his own risk. We add a caution at this point: that in making a deposit of State funds, a warden should not make the deposit in his personal account, nor should he make a general deposit of these funds. Rather, to avoid the possibility of violation of the penal statutes dealing with the misappropriation of funds he should make a special deposit, opening a trust account in which the State funds are deposited solely for safe-keeping and transmission to Austin. See Articles 86 and 87, V.A.P.C.; 7 Am. Jur. 550; 7 Am. Jur. 548. Furthermore, though a check is ordinarily only a conditional payment, if such a check is received by a warden for a license and made payable to the Game, Fish and Oyster Commission, we think the warden has no authority to endorse the instrument for the Commission in the absence of a specific delegation by the Commission of that authority. 40 Am. Jur. 763; Waggoner Bank & Trust Co. vs. Gamer Co., et al., 213 S. W. 927; 2 Am. Jur. 141.

We sincerely hope that our views on this question will aid the Commission in the performance of its duties.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED JAN 4, 1945

ATTORNEY GENERAL OF TEXAS

By Eugene Alvis

Eugene Alvis
Assistant

EA:db

